### FAIREY v. LOVE

#### (121 S. E., 263)

FRAUD—MISREPRESENTATIONS BY BROKER AS TO LOCATION OF LAND HELD NOT ACTIONABLE.—In an action against an agent who sold a lot to plaintiff for misrepresenting the location of the boundary, resulting in plaintiff's erecting his house partly on a lot belonging to another and thereby forcing plaintiff to purchase that lot also, *held,* that evidence failing to show the price paid for the second lot was excessive will not sustain a recovery.

Before WHALEY, J., County Court, Richland, September, 1921. Reversed and remanded.

Action by Thomas A. Fairey against Walter T. Love. Judgment for plaintiff and defendant appeals.

*Messrs. Melton & Belser, f*or appellant, cite: *Knowledge cf falsity of representation must be averred and proven in action for deceit:* 137 Fed., 774; 64 Fed., 80; 27 R. C. L., 376, 377, 357; 29 Ala., 397; 14 L. R. A. (N. S.), 1210; 83 Mo. App., 568; 53 L. R. A., 759; 92 S. C., 384; 58 S. C., 56; 3 Strob., 64; 2 McCord, 167; 3 Brev., 64; 50 S. C., 397. *Person seeking to recover must show that he was not only deceived, but had a right to rely on statements made to him and was not guilty of negligence or inattention:*

27 R. C. L., 376; 192 U. S., 232; 101 S. C., 321. *No evidence of legal damage:* 4 Suth. on Damages, Secs. 1171, 1175.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for respondent, cite: *Misrepresentation as to material matter in sale of real estate is a proper ground for damages or to rescind contract or for abatement of price:* 130 U. S., 643; 38 L. R. A. (N. S.), 303; 3 Cranch., 282; 6 L. R. A. (N. S.), 466; 78 S. E., 645; 79 S. E., 609; 50 S. C., 401; 88 S. C., 155; 142 Fed., 16; Ann. Cas. 1913C, 64; 130 N. W., 1077; 94 Am. Dec., 95; 35 Am. Dec., 405. *Where parties point out the identical land they are bound:* 114 S. C., 335. *Parties not dealing on equal terms:* 50 S. C., 402. *Measure of damages:* 106 S. E., 379; 78 S. C., 206; 70 S. C., 13; 114 S. C., 535.

October 20, 1922.

*Per Curiam.* A reconsideration of this case discloses certain errors in the opinion filed heretofore which, however, do not affect the result. The former opinion is, therefore, withdrawn, and the following is substituted therefor:

Action for damages on account of alleged misrepresentation by the defendant as to the boundaries of a lot of land in the City of Columbia purchased by the plaintiff from one T. O. Ott, for whom the defendant was acting as agent in negotiating the sale.

The facts in the case, as to which there does not appear to be any controversy, are as follows:

The body of land of which the lot in question was a subdivision, was originally subdivided into lots 80x210 feet; Block B, in which the lot was situated, fronted on Sims' Avenue a distance of 560 feet, and was divided into 14 lots, each 80x210, seven of them fronting on Sims' Avenue and seven immediately back of them fronting on Second Avenue, a street parallel with Sims' Avenue. The corners of these lots were marked with iron pins or stakes.

Subsequently a different subdivision of Block B was made; it being divided into 16 lots, each 70x210 feet, eight of them fronting on Sims' Avenue and eight immediately back of them fronting on Second Avenue. It does not appear that the pins or stakes marking the corners of the original 80-foot front lots were changed.

While negotiations were pending between the plaintiff and the defendant, as agent for the owner, the plaintiff insisted upon being taken to the lot and its location pointed out to him. Accordingly, the plaintiff and his wife and the defendant went together to the lot. The plaintiff and his wife testified that the defendant pointed out the iron pins which marked the four corners of the lot and assured them that they were the correct corners; the defendant admits going with them, but denies that he gave any assurance of the exact location of the corners. The plaintiff then closed the contract for the purchase of Lot No. 4 in Block B, as of 70-foot frontage, engaged an architect, and commenced to build. He instructed the architect to locate the house exactly in the middle of the lot as pointed out by the defendant to him and testified that the architect did so. There is reasonable ground for the inference that the lot as located by the defendant was really Lot No. 4 in Block B according to the original subdivision, and that the iron pins pointed out were the corners of that lot. After the building had progressed to a considerable extent, the plaintiff ascertained that it had been located directly on the line which in the later subdivision separated Lot No.4 from the adjacent Lot No. 5, the line passing through the middle of the house. This was the inevitable result of cutting down the frontage of the lots from 80 to 70 feet each. Lot No. 1 would lose 10 feet to Lot No. 2; Lot No. 2 would lose 20 feet to Lot No. 3; Lot No. 3 would lose 30 feet to Lot No. 4; and Lot Uo. 4 would lose 40 feet (one-half) to Lot No. 5—making the line between Lots 4 and 5 under the later

subdivision run through the middle of Lot 4 in the original subdivision.

Lot No. 5 under the later subdivision had been sold to another party, and the plaintiff was notified by him of the encroachment and required to move his building off of his lot.   The cost of moving the house back on the 70-foot lot No. 4 was estimated at $1,000.00 and the process would have resulted in serious injury to the incompleted house. Rather than incur that expense and injury, the plaintiff bought the adjacent lot, No. 5, at $1,587.50.   He claims that he had no use for it, but was forced to buy in order to save the expense and injury, and that owing to a prohibitive clause in the deed he could not further subdivide it. The consequence is that the plaintiff is the owner of a lot 140x210 with his house in the center of the front line of the two consolidated lots.   His action is for $1,600.00 damages resulting from the alleged misrepresentations of the defendant which induced him to locate his house directly on the line between Lots 4 and 5, whereby he was forced to purchase Lot No. 5 to save himself.

The case was submitted to the jury, and a verdict rendered in favor of the plaintiff for $1,200.00.   The defendant has appealed.

.The exceptions raise several questions, but in the view which we take of the question involved in the fifth exception, we do not deem it necessary to consider any other: The point raised by this exception is that there is no evidence in the case tending to show that the plaintiff has suffered any ·damage from the alleged misrepresentation.

· It is assumed for the purposes of this appeal' that the plaintiff was induced by the error of the defendant to erect · his house partly on another man's lot.   He would, therefore, be entitled to recover such damages as resulted proximately from the misrepresentation of the defendant.   The evidence certainly tends to show that the defendant pointed out the corners of the lot which he was offering to sell, and

that in error he pointed out the corners of Lot No. 4 upon the original subdivision, the effect of which, as we have seen, was to induce the plaintiff to locate his house upon what he had the right to assume was the middle of his lot, and not upon the dividing line between Lots 4 and 5 under a later subdivision. The consequence naturally to be expected from such error, the proximate result, was the cost, expense, and incidental injury, of moving the house back to its proper location. The plaintiff did not elect to pursue this course; on the contrary, he allowed the house to remain where it was and purchased the adjacent lot, No. 5, in order to save the expense and injury incident to removal; and sues for damages upon the ground that he was thereby "compelled to purchase the adjoining lot at a large expense."

Assuming, what is by no means clear, that his voluntary acquisition of the adjacent lot was the proximate result of the defendant's error, a result naturally to be anticipated from his mislocation of the lot, we do not find in his testimony any evidence tending to show that such acquisition has damaged the plaintiff.

For all that appears to the contrary he is in possession of property worth every dollar he paid for it. Unquestionably a $5,000.00 house in the center of a lot 140x210 is worth a great deal more than if it were in the center of a lot 70x210. The fact that he may be unable to sell a part of the acquired lot does not necessarily show that the entire lot may not be sold for what he gave for it.

If we assume that the entire property is worth what he paid and allow this judgment to stand for $1,200.00, the result will be that he secures the acquired lot for a little over $300.00 and makes a clear profit of $1,200.00 out of the defendant's error, when all that he has the right to expect is to be made whole.

It may be conceded that the acquired lot, with the house halfway upon it, is worth less than what he paid for it; but there is an entire absence of testimony that the two

lots together, with his house in the center, are worth less than they cost him. If not, he has suffered no damage.

The judgment of this Court is that the judgment of the lower Court be reversed, and that the case be remanded for a new trial.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES FRASER and COTHRAN concur.

MR. JUSTICE MARION (dissenting): I am constrained to dissent from the view announced in the majority opinion. If the plaintiff was entitled to recover in an action of tort upon the theory of the law charged and applied by the trial Judge, I think the ground of reversal upon which the leading opinion is predicated is untenable. There was evidence tending to establish that, as the proximate result of defendant's alleged tortious act, plaintiff had been forced into the embarrassing situation of either having to move his dwelling house at an expense of $1,000.00, with consequent inconvenience and delay, or having to buy another man's lot at a cost of $1,587.00. He pursued the latter course. Because of restrictions as to subdividing in less than 70-foot lots, plaintiff then had a 140-foot lot, with his house approximately in the center, no part of which lot could be sold without either selling the whole or moving the house. He bought the property for the purposes of a home. Even if the view as to the measure of damages announced in the leading opinion were correct—and I do not think it is—the facts in evidence were reasonably susceptible of the inference that the house so located and the 140-foot lot, unsalable except in 70-foot blocks, would bring considerably less than if the house had been so placed as to permit of a sale of a part of the land without moving the house. He bought upon the single lot basis; he could only sell upon a double lot basis. There were facts in evidence upon which the jury—the proper tribunal to determine the issue—could reasonably predicate the finding that by purchasing the additional lot, with his house located as it was, plaintiff had

expended $1,587 and had thereby added to the market value of his property as a whole only $387; the difference representing the amount of the verdict for $1,200. Any additional evidence as to values would have had to be in the nature of opinions based upon the facts. There were facts in evidence from which the jury were entitled to form their own estimate without the aid of the opinion evidence of witnesses. The issue as to the amount of damages was properly submitted to the jury.

I have grave doubt as to whether the law as to liability in tort for an honest misrepresentation was correctly charged and applied on the trial below, and my former concurrence in the judgment of reversal was based upon that ground.

In any view of the case, as it now appears to me, I think the petition for rehearing should be granted.